# Richmond

### Andrew Wagner v. Commonwealth of Virginia

March 2, 1942.

Record No. 2510.

Present, All the Justices.

The opinion states the case.

*W. W. Beverley* and *Leith S. Bremner*, for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Carrington Thompson, Special Assistant,* for the Commonwealth.

HOLT, J., delivered the opinion of the court.

On Sunday morning, August 4, 1940, at about 2:15 a. m., James Cridlin was killed in a three-car collision on U. S. Highway No. 60, leading from Richmond to Newport News. This accident occurred about one mile east of Seven Pines in Henrico county and about four miles west of Bottoms

Bridge. The road itself was a three-lane paved one with pavement 21 feet wide.

For this homicide Andrew Wagner was indicted. The indictment charges that he "unlawfully and feloniously did kill and slay one James Cridlin." A jury found him guilty "as charged in the indictment" and fixed his punishment at three years in the penitentiary. That judgment the court affirmed. From it he has appealed and has obtained from this court a writ of error.

One of these automobiles, a blue car, was driven by Wagner; John Austin drove another, a black car, and J. K. Morrison, the third, black also. It was in the Morrison car that Cridlin sat when he was killed. The Austin car was headed east while the Wagner car and the Morrison car were each headed west.

So far as the record shows, Wagner was first seen at the Sycamore Inn, which inn is about a mile east of where the accident happened. He came to that inn about one o'clock on the morning of the 4th and was then so much under the influence of liquor that Mrs. Agnes A. Moss, who conducted that inn, refused to let him have anything more to drink. He asked that his radiator be filled with water and said: "* * * it was burning up, that he was coming down the road wide open."

After his radiator was filled, and at about twenty minutes before two, he left, going east.

D. R. Haskett, a member of the State police force, who lived at Seven Pines, was called at twenty minutes of three o'clock and went immediately to the scene of the accident but found no one there. He did find the Wagner car in the ditch on the left-hand side of the road going west. Its front fender, rear fender and left-hand side were damaged. About 75 yards to the east he found the Morrison car and the Austin car near each other.

Later, and about six o'clock that morning, he came across Wagner, who was leaving his home and who gave this account of himself:

"Q. What statement did he make to you relative to his

car at the time? A. He pulled his registration card out of his pocket and I pulled up beside him and told me that his car had been stolen the night before and that he had caught a ride from the New Kent highway up over Bottoms Bridge on through Seven Pines to Pohlig's Store and that he got off there and went home.

"Q. Did he tell you where his car was stolen? A. Yes, sir. He said it was stolen at Mac Wigington's Inn. That is the other side of Bottoms Bridge, east of Bottoms Bridge on Route 60.

"Q. Did he tell you what time it was stolen? A. He told me at the time or just before Mac closed up that night or that morning."

Mac Wigington's service station was about one-half mile east of Bottoms Bridge. Wagner came there about a quarter of two and appeared then to have been drinking. Miss Alice Cook, who was then at this service station, said that he left there about five minutes after two, driving his blue Ford car, which had cream colored wheels, and about two or three minutes after Morrison had left, both going west.

Of course he did not then contend that his car was stolen for he was in it. Mrs. Moss, whose service station is east of the point of accident, said she was closing up about ten minutes after two when two cars passed, apparently racing, and going west. One of these she recognized as Wagner's; it was a blue Ford with cream colored wheels.

L. T. Gray knew Wagner. He was at Keane's service station at about twenty minutes of three o'clock, and a number of people were there, talking excitedly about the wreck. Wagner, without a hat, came up the road from the direction of the accident, walking rapidly. He "yelled at the boy but he never stopped."

Austin, who was going east toward Bottoms Bridge on his right-hand side of the road, saw a car coming toward him, apparently head-on. "It was flying, coming just as fast as it could fly." It struck him, and he knew no more.

Morrison said that the night was foggy; that he was watching the road on his side to keep from running off the

pavement; that his attention was engrossed in this, and that he could not say whether a car passed him or not. All that he remembers is that he was struck, and he, too, knew no more.

At the same term of court, and the day before the instant case was heard, Wagner was tried on a charge of reckless driving under the influence of intoxicants and was found not guilty. Counsel here made this objection:

"* * * In the lower court there was also a warrant charging Wagner for operating his car under the influence of liquor at the time Cridlin was killed on this involuntary manslaughter indictment which we have here today. It is true that Wagner was acquitted on that other charge, but there are certainly twelve of this jury or four who sat here and heard the charge read against him and I am sure that he could certainly be prejudiced in this case to have that same jury sit in this case.

"The court: You mean those five?

"Mr. Beverley: All of them that heard the evidence in that case. They are bound to know something about the case that he has been here only yesterday on the charge of operating a car under the influence of liquor."

He asked for a continuance.

In *Burford* v. *Commonwealth*, 132 Va. 512, 110 S. E. 428, the defendant was charged with breaking into and entering a railroad car. On the day afterwards, he was charged with shooting one Dotson. At his second trial, this objection was urged, as against the jury:

"It is assigned as error that the same jury was used for the trial of the instant case as on the trial of the other case. Just when this objection was made is not clear from the record. The bill of exceptions on this point is very brief and is as follows:

" 'On the trial of the issue involved in this case the court caused to be impaneled the same jury which had just tried and convicted the defendant on another charge, to which action of the court the defendant, by counsel, objected, which objection was overruled by the court and to which the defendant duly excepted.' "

The court, in passing upon that assignment of error, said: "While we do not think that the practice of using the same jury to try an accused for different offenses is to be commended, we cannot say that it is error."

In *Burford's Case*, we find that he was convicted at the first trial. In this case, Wagner was found not guilty. In each instance the jury was examined and found to be free from exceptions, save that noted.

Ample authority for the decision in *Burford's Case* is there cited; it is not necessary that it be restated.

Since no evidence was offered on behalf of the defendant, and since no excuse for this failure was made, there was no point in asking for a continuance.

Error is assigned to certain statements made by Mrs. Moss. She said that Wagner was so intoxicated that she would not sell him any more intoxicants. Wagner left Mrs. Moss' inn at twenty minutes before two, and he left it so hurriedly that his car skidded and threw up gravel when it pulled out. He reached Mac Wigington's place at quarter before two and appeared to be intoxicated when he got there. In short, Wagner was under the influence of liquor from the time he first comes into the record until after the accident. There is no merit in this contention.

Mrs. Cooke said that when Wagner left Mac Wigington's place, he was driving right fast. Even if we were to concede that this was error, it is inconsequential. From first to last, Wagner was under the influence of intoxicants, and evidence of his conduct during this period of time indicating carelessness is plainly competent. That he must have been driving rapidly is made manifest by the fact that he overtook and passed Morrison, who was from two to three minutes ahead of him at the start, and must have been racing past Morrison when he was seen from the Sycamore Inn, just before the accident.

The evidence, though circumstantial, is ample to sustain the verdict.

Wagner claimed that he was not driving his car but that it had been stolen from Mac Wigington's service station and was being driven by the thief. Manifestly this was not true.

When he left that station, he was two or three minutes behind Morrison; he was racing past Morrison at the Sycamore Inn and was driving rapidly and recklessly, under the influence of some intoxicant, on the wrong side of the road when he ran into Austin. Into this wreck Morrison probably ran; he was driving prudently and on the right side of the road. Cridlin's death can be charged to Wagner and to no one else.

There is no error in the record.

*Affirmed.*